1
2
3
4
5
6          **UNITED STATES DISTRICT COURT**
7              **DISTRICT OF NEVADA**
8

9   GREGORY D. BOLIN,                    )
10                 Petitioner,            )        3:07-CV-00481-RLH-VPC
                                          )
11  vs.                                   )
                                          )    **ORDER**
12  RENEE BAKER,[1] *et al.*,             )
                                          )
13                 Respondents.           )
                                          )
14  _____/

15          On November 8, 2010, respondents filed a motion to dismiss with respect to petitioner

16  Bolin's second amended petition for writ of habeas corpus.  Docket #59.  Respondents contend that

17  all of the numbered claims in the petition are either partially or wholly unexhausted.  In addition,

18  respondents argue that several claims are untimely under 28 U.S.C. § 2244, two claims are

19  procedurally barred, and one claim is not cognizable in a federal habeas proceeding.  On August 12,

20  2011, Bolin filed an opposition to the motion to dismiss.  Docket #87.  Respondent's filed a reply on

21  September 12, 2011.  Docket #89.  For the reasons that follow, respondents' motion to dismiss shall

22  be granted in part and denied in part.

23          I.  Procedural History

24          On July 15, 1996, a jury sitting in the state district court for Clark County, Nevada, returned a

25

26  _____
    [1]      Renee Baker is substituted for her predecessor, E.K. McDaniel, as Warden of Ely State Prison.
    Fed. R. Civ. P. 25(d).

verdict finding Bolin guilty of first-degree kidnaping, sexual assault, and first-degree murder.  At the conclusion of the penalty phase, the jury found three aggravating circumstances and no mitigating circumstances.  Bolin was sentenced to death.

On May 19, 1998, Bolin's convictions and death sentence were affirmed on direct appeal. *Bolin v. State*, 114 Nev. 503, 960 P.2d 784 (1998).  Bolin timely filed a motion for rehearing which was denied on August 27, 1998, by the Nevada Supreme Court.  His subsequent petition for a writ of certiorari to the U.S. Supreme Court was also denied.  *Bolin v. Nevada*, 525 U.S. 1179 (1999).

Bolin initiated state post-conviction proceedings on April 22, 1999.  On July 28, 2005, the state district court entered an Amended Findings of Facts, Conclusions of Law and Order denying Bolin's state district court petition.  The Nevada Supreme Court affirmed that denial of relief on June 22, 2007, and issued its remittitur on July 17, 2007.  On November 19, 2007, Bolin filed a petition for a writ of certiorari in the United States Supreme Court, which was denied on February 25, 2008. *Bolin v. Nevada*, 552 U.S. 1231 (2008).

On October 15, 2007, Bolin filed the proper person § 2254 petition for writ of habeas corpus that initiated his current case in the federal district court.  On November 9, 2007, the district court appointed the Federal Public Defender's Office (FPD) to represent Bolin during his federal habeas corpus proceedings.  On April 30, 2008, Bolin filed an amended petition.  Docket #18.  The FPD was subsequently relieved as counsel due to an irreconcilable conflict.  On February 6, 2009, Saor Stetler was appointed as new counsel.

On July 30, 2009, petitioner filed the second amended petition for writ of habeas corpus that is the subject of respondents' motion to dismiss.  Docket #49.

II.  <u>Analysis</u>

1.  *Proper response to amended petition*

Even though this court's scheduling order specifically provides for such a response (docket #46), Bolin argues that respondents' motion to dismiss should be denied because it is non-responsive under Rules 4 and 5 of the Rules Governing Section 2254 Cases (Habeas Rules).  According to

1    Bolin, respondents should be required to file an answer, rather than a motion to dismiss.

2         This argument is wholly without merit.  The Ninth Circuit has held that there is no "blanket

3    bar against motions to dismiss" filed in response to habeas petitions.  *White v. Lewis*, 874 F.2d 599,

4    603 (9th Cir. 1989).  Moreover, when the Habeas Rules were amended in 2004, Rule 4 was changed,

5    in part, to "reflect[] that the response to a habeas petition may be a motion."  Habeas Rule 4,

6    Advisory Committee Notes on 2004 amendments.  Because Rule 4 allows for a response other than a

7    formal answer under Rule 5, this court shall entertain respondents' motion to dismiss.

8              2. *Timeliness*

9         The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year

10   filing period for § 2254 habeas petitions in federal court.  28 U.S.C. § 2244(d)(1).  The one-year

11   period begins to run from the latest of four possible triggering dates, with the most common being

12   the date provided by subparagraph (A) – *i.e.*, the date on which the petitioner's state court conviction

13   became final (by either the conclusion of direct appellate review or the expiration of time for seeking

14   such review).  *Id.*  Statutory tolling of the one-year time limitation occurs while a "properly filed"

15   state post-conviction proceeding or other collateral review is pending.  28 U.S.C. § 2244(d)(2).

16        Respondents concede that Bolin's initial petition (docket #2) and first amended petition

17   (docket #18) were timely under § 2244(d)(1).  Respondents argue, however, that Bolin's second

18   amended petition (docket #49) was filed well beyond the one-year period and that several claims in

19   that pleading are time-barred from federal court review because they do not "relate back" to the

20   earlier-filed petitions.

21        The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), significantly limits a

22   habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier petition

23   and, therefore, be considered timely under 28 U.S.C. § 2244(d).  In *Mayle*, the Court concluded that

24   the Ninth Circuit's former relation-back standard under Federal Rule of Civil Procedure 15(c)(2)

25

26

1   (now Rule 15(c)(1)(B)),[2] which allowed an amendment to a habeas petition to "relate back" to the

2   date of the original petition "so long as the new claim stems from the habeas petitioner's trial,

3   conviction, or sentence," was too broad. *Id*. at 656-57. The Court held that an amended claim in a

4   habeas petition relates back for statute of limitations purposes only if it shares a "common core of

5   operative facts" with claims contained in the original petition. *Id*. at 663-64. The common core of

6   operative facts must not be viewed at too high a level of generality, and an "occurrence," for the

7   purposes of Fed. R. Civ. P. 15(c), will consist of each separate set of facts that supports a ground for

8   relief. *Id*. at 661.

9       Although they miscalculate the time during which this court tolled the limitations period to

10   allow for the appointment of new counsel,[3] respondents are correct that the one-year limitation

11   period elapsed between the date on which Bolin filed his first amended petition (April 30, 2008) and

12   the date on which he filed his second amended petition (July 30, 2009). Bolin makes no argument

13   that the holding in *Mayle* does not affect the timeliness of claims in his petition, nor does he claim

14   that he is entitled to equitable tolling for any claim that does not "relate back" to his timely-filed

15   petitions. Thus, the court shall now turn to the claims identified as untimely by the respondents to

16   determine if they relate back to claims in Bolin's timely-filed petitions. *See Mayle*, 545 U.S. at 657.

17       *Claim Twenty-four*. In Claim Twenty-four, Bolin claims that his convictions and death

18   sentence violate his constitutional rights because he is "factually innocent" of capital murder. To

19   support this claim, Bolin alleges that he was convicted on based on flawed, unreliable, and

20   inadmissible evidence such as a 1975 rape and kidnaping conviction, an unconstitutionally

21   suggestive identification procedure, a faulty DNA analysis of "foreign" pubic hairs found on the

22   victim, and items obtain from his home and person in violation of the Fourth Amendment. He also

23   alleges in Claim Twenty-four that the police failed to preserve the pubic hair evidence for additional

24   _____

25   [2]     Effective December 1, 2007, former Fed. R. Civ. P. 15(c)(2) was amended for stylistic purposes only and recodified as Fed. R. Civ. P. 15(c)(1)(B).

26   [3]     The tolling period for this purpose ran from April 30, 2008 (not August 14, 2008, as argued by respondents) until April 21, 2009. Docket #44.

testing and that the prosecution made unsubstantiated claims in closing arguments as to the statistical probability that Bolin was the source of the hairs.

Claims Five, Seven, Eight, Nine, Twenty, and Twenty-five of Bolin's first amended petition rely on the same operative facts as those that support Claim Twenty-four in the second amended petition.  As such, Claim Twenty-four relates back to the earlier pleading and is timely.

*Claim Thirty-two*.  In Claim Thirty-two, Bolin claims that the Nevada death penalty scheme is unconstitutional because it gives county prosecutors unlimited discretion in seeking the death penalty unchecked by any state-wide uniform standards.  This claim does not share a common core of operative facts with any claim or claims contained in Bolin's initial petition or first amended petition.  Thus, the claim does not relate back and is untimely.

*Claim Thirty-four*.  In Claim Thirty-four, Bolin claims that the Nevada death penalty statute violates the Constitution because it lacks adequate standards for evaluating the appropriate sentence; lacks safeguards to ensure that the sentencer focuses on permissible sentencing considerations; lacks a mechanism to ensure the reliability of the sentence; has overlapping and vague aggravating circumstances; uses overbroad, vague language; and depends on extensive, unguided prosecutorial discretion.  This claims shares a common core of operative facts with Claim Thirty in Bolin's first amended petition.  As such, the claim relates back to earlier pleading and is timely.

*Claim Thirty-five*.  In Claim Thirty-five, Bolin claims that the Nevada death penalty scheme is unconstitutional under the Supreme Court precedents established by *Jones v. United States*, 526 U.S. 227 (1999); *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000); and *Ring v. Arizona*, 536 U.S. 584 (2002). This claim does not share a common core of operative facts with any claim or claims contained in Bolin's initial petition or first amended petition.  Thus, the claim does not relate back and is untimely.

*Claim Thirty-six*.  In Claim Thirty-six, Bolin claims that his death sentence is constitutionally invalid because the State failed  to allege the capital-eligibility factors in its charging document.  This claim does not share a common core of operative facts with any claim or claims contained in

1    Bolin's initial petition or first amended petition.  Thus, the claim does not relate back and is

2    untimely.

3        *Claim Thirty-seven*.  In Claim Thirty-seven, Bolin claims his death sentence is

4    constitutionally invalid because the elements of capital eligibility were not found beyond a

5    reasonable doubt.  In support of this claim, Bolin alleges that the special verdict form returned by the

6    jury included a checked box indicating that the mitigating circumstances were not sufficient to

7    outweigh the aggravating circumstances, but did not indicate hat the jury was convinced

8    unanimously or beyond a reasonable doubt that the aggravating circumstances substantially

9    outweighed the mitigating circumstances.

10       This claim does not share a common core of operative facts with any claim or claims

11   contained in Bolin's initial petition or first amended petition.  Thus, the claim does not relate back

12   and is untimely.

13       *Claim Thirty-eight*.  In Claim Thirty-eight, Bolin claims that his conviction and death

14   sentence are constitutionally invalid because of the lack of an impartial tribunal, specifically the trial

15   judge who displayed bias against the defense and for the prosecution.  This claim does not share a

16   common core of operative facts with any claim or claims contained in  Bolin's initial petition or first

17   amended petition.  Thus, the claim does not relate back and is untimely.

18       *Claim Thirty-nine*.  In Claim Thirty-nine, Bolin claims that the Nevada statute allowing first

19   degree murder to be aggravated only by enumerated circumstances is unconstitutionally vague, as

20   interpreted by the Nevada Supreme Court, because it permits introduction at the penalty phase of

21   "evidence outside the nine areas of aggravating circumstances."  This claim does not share a

22   common core of operative facts with any claim or claims contained in Bolin's initial petition or first

23   amended petition.  Thus, the claim does not relate back and is untimely.

24       *Claim Forty*.  In Claim Forty, Bolin claims that Nevada's death penalty statute is

25   unconstitutional because it allows for the use of unspecified non-statutory aggravating

26   circumstances.  This claim does not share a common core of operative facts with any claim or claims

contained in Bolin's initial petition or first amended petition.  Thus, the claim does not relate back and is untimely.

*Claim Forty-one*.  In Claim Forty-one, Bolin claims that death sentence is constitutionally invalid because Nevada law authorizes a reduced standard of reliability for admission of evidence at the penalty phase of a capital trial.  This claim does not share a common core of operative facts with any claim or claims contained in Bolin's initial petition or first amended petition.  Thus, the claim does not relate back and is untimely.

*Claim Forty-two*.  In Claim Forty-two, Bolin claims that death sentence is invalid because the manner in which the jury is death qualified in Nevada, including in his case, violates several constitutional provisions.  In contrast to Claim One of his second amended petition, which focuses on the manner in which the jury was death qualified in this particular case, Claim Forty-two challenges the constitutionality of the death qualification standard in Nevada.  This claim does not share a common core of operative facts with any claim or claims contained in  Bolin's initial petition or first amended petition.  Thus, the claim does not relate back and is untimely.

*Claim Forty-three*.  In Claim Forty-three, Bolin claims that death sentence is invalid because the death qualification of the jury in his case violated *the prospective jurors'* constitutional rights.  This claim does not share a common core of operative facts with any claim or claims contained in Bolin's initial petition or first amended petition.  Thus, the claim does not relate back and is untimely.

*Claim Forty-five*.  In Claim Forty-five, Bolin claims that his death sentence is constitutionally invalid because the sentence is disproportional in light of the circumstances of the crime and the character of the defendant.  This claim does not share a common core of operative facts with any claim or claims contained in  Bolin's initial petition or first amended petition.  Thus, the claim does not relate back and is untimely.

*Claim Forty-eight*.  In Claim Forty-eight, Bolin claims that the execution of his death sentence after keeping on death row for an inordinate amount of time violates his rights under the

Eighth Amendment.  This claim does not share a common core of operative facts with any claim or claims contained in  Bolin's initial petition or first amended petition.  Thus, the claim does not relate back and is untimely.

*Claim Forty-nine and Fifty*.  In Claims Forty-nine and Fifty, Bolin claims, respectively, that his mental impairments make him ineligible for a death sentence and would render his execution unconstitutional.  In Claim Thirty-five of his first amended petition and Claim Fifty-two of his second amended petition, Bolin claims that his sentence of death is constitutionally invalid because, although he "does not, at this time, assert that he is incompetent to be executed," he *may become* incompetent by the time the sentence is to be carried out.  Because they rely on a different set of operative facts than Claim Thirty-five of the first amended petition and any other claim contained in that pleading or Bolin's initial petition, both Claim Forty-nine and Fifty are time-barred.

*Claim Fifty-one*.  In Claim Fifty-one, Bolin claims that his confinement and sentence are unconstitutional because, throughout post-conviction proceedings, his mental disabilities have impaired his ability to adequately understand the legal proceedings, and to aid and assist in his defense.  This claim does not share a common core of operative facts with any claim or claims contained in  Bolin's initial petition or first amended petition.  Thus, the claim does not relate back and is untimely.

### 3. *Exhaustion*

Exhaustion of state remedies is a prerequisite to a federal court's consideration of a petition for a writ of habeas corpus.  28 U.S.C. §2254(b).  To exhaust a ground for relief, a petitioner must fairly present that ground for relief to the state's highest court, and must give that court the opportunity to address and resolve it.  *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).  The "fair presentation" requirement is satisfied when the claim has been presented to the highest state court by describing the operative facts and the legal theory upon which the federal claim is based.  *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir. 1982), *cert. denied*, 463 U.S. 1212 (1983).

1    To fairly present a federal claim to the state court, the petitioner must alert the court to the

2    fact that he asserts a claim under the United States Constitution. *Hiivala v. Wood*, 195 F.3d 1098,

3    1106 (9th Cir. 1999) (citing *Duncan*, 513 U.S. at 365-66), *cert. denied*, 529 U.S. 1009 (2000). The

4    mere similarity of claims of state and federal error is insufficient to establish exhaustion. *Hiivala*,

5    195 F.3d at 1106, (citing *Duncan*, 513 U.S. at 366); *see also Lyons v. Crawford*, 232 F.3d 666, 668-

6    69 (9th Cir. 2000), *as modified by*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne,* 223 F.3d 982,

7    987 (9th Cir. 2000). The petitioner must have "characterized the claims he raised in state proceedings

8    *specifically* as federal claims." *Lyons*, 232 F.3d at 670. This is accomplished either by referencing a

9    specific provisions of the federal constitution or by citing to either a federal or state case involving

10   the legal standard for a federal constitutional violation. *See id.*; *Peterson v. Lampert*, 319 F.3d 1153,

11   1158 (9th Cir. 2003) (en banc). "[G]eneral appeals to broad constitutional principles, such as due

12   process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion."

13   *Hiivala*, 195 F.3d at 1106, (citing *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)); *see also*

14   *Shumway*, 223 F.3d at 987.

15   As noted, respondents contend that all of the claims in Bolin's second amended petition are

16   partially or wholly unexhausted. As discussed above, many of Bolin's claims are time-barred; thus,

17   the question whether these claims are exhausted is moot. In addition, Bolin concedes that Claims

18   One, Two, Three, Four, Twelve, Eighteen, Twenty, Twenty-Five, Forty-Three, Forty-Six,

19   Forty-Seven, Forty-Eight, Forty-Nine, Fifty, Fifty-One, Fifty-Two, and Fifty-Four have not been

20   exhausted. Docket #49, p. 22.

21   With respect to Claims Seven, Thirteen, Nineteen, Twenty-one, Twenty-two, Thirty, Thirty-

22   one, Thirty-two, Thirty-three, Thirty-four, Thirty-five, Thirty-six, Thirty-seven, Thirty-eight, Thirty-

23   nine, Forty, Forty-one, Forty-two, Forty-four, Forty-five, and Fifty-five, Bolin contends that these

24   claims should be deemed exhausted by virtue of the Nevada Supreme Court's duty to review death

25

26

9

1    penalty cases under Nev. Rev. Stat. 177.055[4] or its willingness to *sua sponte* review death penalty

2    cases for constitutional error.  In order to find any of Bolin's claims exhausted by virtue of the

3    Nevada Supreme Court's review under Nev. Rev. Stat. 177.055, this court must be satisfied that such

4    review encompassed the specific factual and a federal law grounds advanced by Bolin in his federal

5    petition.  *See Comer v. Schriro*,  463 F.3d 934, 954-56 (9th Cir. 2006) (examining whether

6    petitioner's federal habeas claims were impliedly exhausted under the Arizona Supreme Court's

7    independent review process).

8         In allowing implied exhaustion in *Comer*, the court of appeals noted that, pursuant to

9    Arizona's statutes and case law, the Arizona Supreme Court "examines the entire record, particularly

10   the sentencing hearing, to determine if any procedural errors occurred or other arbitrary factors

11   influenced the sentencing court's decision to impose the death sentence," and that the court "is

12   clearly conscious of its duty to respect the dictates of the Eighth and Fourteenth Amendments and to

13   ensure that the death penalty is not imposed in an arbitrary and capricious fashion." *Id*. at 955.  In

14   addition, the court of appeals held that only claims that are "clearly encompassed within Arizona's

15   independent review" and  "readily apparent from the record" will be deemed impliedly exhausted.

16   *Id*. at 956.

17        Here, neither the statute itself nor Nevada case law obligates the Nevada Supreme Court to

18   apply federal law standards in conducting its review under Nev. Rev. Stat. 177.055.  *Sechrest v.*

19   *Ignacio*, 943 F.Supp. 1245, 1250 (D.Nev. 1996).  Moreover, Bolin has not shown that any of the

20   claims at issue is "clearly encompassed" within the scope of Nev. Rev. Stat. 177.055 or that any of

21   them is "readily apparent" in the record reviewed by the Nevada Supreme Court.  Consequently,

22   none of Bolin's claims shall be deemed exhausted by virtue of Nev. Rev. Stat. 177.055.

23        With regard to the Nevada Supreme Court's purported willingness to *sua sponte* address a

24

25   _____

26   [4]     Nev. Rev. Stat. 177.055 requires the Nevada Supreme Court, in death penalty cases, to review not only those errors actually asserted by the defendant on appeal, but also the sufficiency of the evidence supporting aggravating factors, whether the death sentence was imposed as a result of passion, prejudice, or any arbitrary factor, and whether the sentence was excessive.

1   potential constitutional violation, Bolin cites to *Bejarano v. State*, 801 P.2d 1388 (Nev. 1990).  In

2   that case, the Nevada Supreme Court considered *sua sponte* whether trial counsel's failure to present

3   evidence of the appellant's personality disorders and a low intelligence as mitigating circumstances

4   constituted ineffective assistance of counsel.  *Bejarano*, 801 P.2d at 1390.  In doing so, the court

5   cited to the then-recent decision in *Deutscher v. Whitley*, 884 F.2d 1152 (9th Cir. 1989), a case in

6   which the Ninth Circuit found ineffective assistance of counsel based on similar circumstances.

7            Of course, simply because the state supreme court chose *sua sponte* to address a salient

8   constitutional issue in a particular case does not mean that the court considers such issues in all

9   capital cases.  Indeed, the fact that Bolin cites to only one case suggests that *sua sponte* review of

10   constitutional issues is an exception, not a rule, for the Nevada Supreme Court.  As such, this court

11   finds no merit to Bolin's argument that the Nevada Supreme Court's "practice" of reviewing cases

12   for constitutional error *sua sponte* effects exhaustion of claims that he did not present to the state

13   supreme court.

14            As for the claims in the second amended petition that are neither time-barred , nor

15   admittedly-unexhausted, the court finds as follows.

16            *Claim Five*.  In Claim Five, Bolin claims that his conviction and death sentence are

17   unconstitutional because they are based on the admission of prior bad act testimony concerning a

18   1975 conviction.  Bolin exhausted this claim in his direct appeal and his state post-conviction

19   proceeding.  Docket #60-9, p. 25-41; docket #60-10, p. 2-14; docket #63-7, p. 19-21.[5]  However,

20   legal theories alleged in Claim Five other than violations of the Fifth, Sixth, and Fourteenth

21   Amendments remain unexhausted.

22            *Claim Six*.  In Claim Six, Bolin claims that the Nevada Supreme Court violated his

23   constitutional rights by allowing the admission of prior bad act evidence.  Bolin exhausted this claim

24   in his state post-conviction proceeding. Docket #63-7, p. 19-21.  However, legal theories alleged in

25   Claim Six other than violations of the Fifth, Sixth, and Fourteenth Amendments remain

26   _____

[5]  Citations to the record herein use the CM/ECF pagination.

1  unexhausted.

2      *Claim Seven*.  In Claim Seven, Bolin claims that his conviction and death sentence are

3  unconstitutional due to the improper admission of racially charged evidence and arguments

4  throughout the pretrial, trial and appellate stages of his case.  This claim was never presented to the

5  Nevada Supreme Court and, therefore, remains unexhausted.

6      *Claim Eight*.  In Claim Eight, Bolin claims he received ineffective assistance of trial counsel

7  due to counsel's failure to adequately challenge the introduction of illegally obtained evidence.

8  Bolin exhausted this claim in his state post-conviction proceeding. Docket #63-8, p. 22-23.

9  However, legal theories alleged in Claim Eight other than a violation of his right to effective

10 assistance of counsel under the Sixth and Fourteenth Amendments remain unexhausted.

11     *Claim Nine*.  In Claim Nine, Bolin claims that his constitutional rights were violated by the

12 improper admission of scientific and statistical evidence.  Bolin exhausted this claim in his direct

13 appeal and the appeal of his state post-conviction proceeding.  Docket #60-11, p. 7-34; docket #63-7,

14 p. 24-30; docket #63-8, p. 2-5.  However, legal theories alleged in Claim Nine other than violations

15 of the Due Process Clause and right to effective assistance of counsel under the Fifth, Sixth, and

16 Fourteenth Amendments remain unexhausted.

17     *Claim Ten*.  In Claim Ten, Bolin claims that his conviction and sentence violate his

18 constitutional rights because the trial court arbitrarily admitted an unreliable eyewitness

19 identification of him.  Bolin exhausted this claim in his direct appeal and the appeal of his state post-

20 conviction proceeding.  Docket #60-10, p. 14-31; docket #63-8, p. 13-18.  However, legal theories

21 alleged in Claim Ten other than violations of his right to due process, a fair trial, and effective

22 assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments remain unexhausted.

23     *Claim Eleven*.  In Claim Eleven, Bolin claims that conviction and sentence violate his

24 constitutional rights because the State mishandled and destroyed crucial evidence in his case.  The

25 evidence identified by Bolin in this claim consists of pubic hair combings from the victim and DNA

26 and fingerprint evidence from the bed of the victim's pickup truck.

1    Bolin raised claims in his state post-conviction proceeding in which he alleged violations of

2    his rights to due process, a fair trial, and effective assistance of counsel in relation to the State's

3    handling of the pubic hair evidence.  Docket #63-8, p. 5-13.  He never raised, however, a state court

4    claim related to the State's handling of evidence from the pickup truck.  Consequently, Claim Eleven

5    is unexhausted as to those allegations.  In addition, the claim is completely unexhausted as to legal

6    theories other than violations of the right to due process, a fair trial, and effective assistance of

7    counsel under the Fifth, Sixth, and Fourteenth Amendments.

8        *Claim Thirteen*.  In Claim Thirteen, Bolin claims that his conviction and death sentence

9    violate his constitutional rights because the trial court admitted gruesome and prejudicial

10   photographs of the autopsy that rendered trial fundamentally unfair.  This claim was never presented

11   to the Nevada Supreme Court and, therefore, remains unexhausted.

12       *Claim Fourteen*.  In Claim Fourteen, Bolin asserts five ways in which his trial counsel's

13   performance during the guilt phase of his trial amounted to ineffective assistance of counsel:  (a)

14   failure to communicate with each other with respect of voir dire and examining expert witnesses, (b)

15   failure to hire an investigator in a timely manner and promptly move to preserve physical evidence,

16   © failure to hire an institutionalization expert regarding future dangerousness, (d) failure to present a

17   defense to the State's argument as to Bolin's alleged "sexual aberration," and (e) failure to hire

18   mental health experts to evaluate Bolin's competence to stand trial and his mental state at the time of

19   the alleged crime.  While Bolin raised several ineffective assistance of counsel claims in state court,

20   none of them were based on the same or similar factual allegations as any of these five sub-claims.

21   As such, Claim Fourteen is completely unexhausted.

22       *Claim Fifteen*.  In Claim Fifteen, Bolin claims that his conviction and death sentence are

23   constitutionally invalid because the jury instructions at his trial failed to require the jury to find all of

24   the *mens rea* elements of first-degree murder.  He cites specifically to jury instructions on

25   premeditation and implied malice.  Bolin exhausted this claim in his direct appeal.  Docket #60-12,

26   p. 7-15.  However, legal theories alleged in Claim Fifteen other than violations of his constitutional

1   right to due process and a fair trial remain unexhausted.

2       *Claim Sixteen*.   In Claim Sixteen, Bolin claims that his conviction and death sentence are

3   constitutionally invalid because the jury instruction on reasonable doubt given during both the guilt

4   and punishment phases of his trial improperly minimized the State's burden of proof.   Bolin

5   exhausted this claim in his direct appeal.   Docket #60-12, p. 2-6.   However, legal theories alleged in

6   Claim Sixteen other than violations of his constitutional right to due process and a fair trial remain

7   unexhausted.

8       *Claim Seventeen*.   In Claim Seventeen, Bolin claims that his conviction and death sentence

9   are in violation of his constitutional rights because the prior bad act instruction given at his trial

10  invited the jury to consider inadmissible character evidence.   Bolin exhausted this claim in his direct

11  appeal and the appeal of his state post-conviction proceeding.   Docket #60-11, p.35-41; docket #60-

12  12, p.2; docket #63-7, p. 21-22.   However, legal theories alleged in Claim Seventeen other than

13  violations of the constitutional right to due process, a fair trial, and effective assistance of counsel

14  remain unexhausted.

15      *Claim Nineteen*.   In Claim Nineteen, Bolin claims that his conviction and death sentence

16  violate his constitutional rights because the jury instructions defining torture, mutilation and

17  depravity of mind were overly broad and did not protect against the arbitrary and capricious

18  infliction of the death penalty.   This claim was never presented to the Nevada Supreme Court and,

19  therefore, remains unexhausted.

20      *Claim Twenty-one*.   In Claim Twenty-one, Bolin claims that his conviction and death

21  sentence violate his constitutional rights because the jury instructions did not properly instruct the

22  jury on the limited use of prior bad act evidence in the penalty phase and did not protect against the

23  arbitrary and capricious infliction of the death penalty.   This claim was never presented to the

24  Nevada Supreme Court and, therefore, remains unexhausted.

25      *Claim Twenty-two*.   In Claim Twenty-two, Bolin claims that his conviction and death

26  sentence violate his constitutional rights due to several instances of prosecutorial misconduct.   This

claim was never presented to the Nevada Supreme Court and, therefore, remains unexhausted.

*Claim Twenty-three*. In Claim Twenty-three, Bolin claims that his conviction and death sentence violate his constitutional rights due to the admission of cumulative and prejudicial victim impact testimony at the guilt and penalty phases of his trial. Bolin exhausted this claim in his direct appeal. Docket #60-12, p. 32-38. However, legal theories alleged in Claim Twenty-three other than a violation of his constitutional right to due process remain unexhausted.

*Claim Twenty-four*. As noted above, Bolin asserts in Claim Twenty-four that his conviction and death sentence violate his constitutional rights because he is "factually innocent" of capital murder and, as support for the claim, alleges that he was convicted on based on flawed, unreliable, and inadmissible evidence such as a 1975 rape and kidnaping conviction, an unconstitutionally suggestive identification procedure, a faulty DNA analysis of "foreign" pubic hairs found on the victim, and items obtain from his home and person in violation of the Fourth Amendment. While he made several of the same factual allegations in state court, Bolin never presented the Nevada Supreme Court with a "factual innocence" claim supported by a similar set of factual allegations. As such, Claim Twenty-four is unexhausted.

*Claim Twenty-six*. In Claim Twenty-six, Bolin contends that his trial counsel's performance during the penalty phase of his trial amounted to ineffective assistance of counsel because counsel failed to investigate and present mitigating evidence on his behalf and presented an outrageous closing and improper closing argument. Bolin exhausted this claim in his state post-conviction proceeding. Docket #63-8, p. 23. However, legal theories alleged in Claim Twenty-six other than a violation of his constitutional right to effective assistance of counsel remain unexhausted.

*Claim Twenty-seven*. In Claim Twenty-seven, Bolin claims that his conviction and death sentence violate his constitutional rights due to the trial court's failure to sentence him on his other convictions and failure to make a habitual criminal finding prior to the capital sentencing hearing. Bolin exhausted this claim in his direct appeal. Docket #60-12, p. 22-32. However, legal theories alleged in Claim Twenty-seven other than violations of the Fifth, Sixth, and Fourteenth Amendments

remain unexhausted.

*Claim Twenty-eight*.  In Claim Twenty-eight, Bolin claims that his conviction and death sentence violate his constitutional rights due to the State's failure to submit all of the elements of capital eligibility to the grand jury or to the court for a probable cause determination.  This claim was never presented to the Nevada Supreme Court and, therefore, remains unexhausted.

*Claim Twenty-nine*.  In Claim Twenty-nine, Bolin claims that his conviction and death sentence violate his constitutional rights because his capital trial, sentencing, and review on direct appeal were conducted by or before state-elected judges.  This claim was never presented to the Nevada Supreme Court and, therefore, remains unexhausted.

*Claim Thirty*.  In Claim Thirty, Bolin claims that his conviction and death sentence violate his constitutional rights due to the failure of the Nevada Supreme Court to conduct fair and adequate appellate review.  This claim was never presented to the Nevada Supreme Court and, therefore, remains unexhausted.

*Claim Thirty-one*.  In Claim Thirty-one, Bolin claims that his conviction and death sentence violate his constitutional rights because the Nevada capital punishment system operates in an arbitrary and capricious manner.  This claim was never presented to the Nevada Supreme Court and, therefore, remains unexhausted.

*Claim Thirty-three*.  In Claim Thirty-three, Bolin claims that the Nevada death penalty statute is unconstitutional because fails to truly narrow the categories of death-eligible defendants.  This claim was never presented to the Nevada Supreme Court and, therefore, remains unexhausted.

*Claim Thirty-four*.  As noted above, Bolin asserts in Claim Thirty-four that the Nevada death penalty statute violates the Constitution because it lacks adequate standards for evaluating the appropriate sentence; lacks safeguards to ensure that the sentencer focuses on permissible sentencing considerations; lacks a mechanism to ensure the reliability of the sentence; has overlapping and vague aggravating circumstances; uses overbroad, vague language; and depends on extensive, unguided prosecutorial discretion.  This claim was never presented to the Nevada Supreme Court

1    and, therefore, remains unexhausted.

2         *Claim Forty-four*.  In Claim Forty-four, Bolin claims that his conviction and death sentence

3    violate his constitutional rights because the death penalty is, in all circumstances, cruel and unusual

4    punishment.  This claim was never presented to the Nevada Supreme Court and, therefore, remains

5    unexhausted.

6         *Claim Fifty-three*.  In Claim Fifty-three, Bolin claims that his conviction and death sentence

7    violate his constitutional rights because his appellate counsel failed to raise substantial and

8    cognizable state and federal constitutional issues, and failed to raise all available grounds on his

9    direct appeal to the Nevada Supreme Court as detailed herein.  Bolin sought relief in state court

10   based on his appellate counsel's allegedly deficient performance, but on far more limited grounds.

11   He challenged appellate counsel's failure to challenge "prior bad acts" evidence as both a violation

12   of state law and of his constitutional rights.  Docket #63-7, p. 21-23.  He also challenged counsel's

13   failure to challenge the State's suppression of potentially exculpatory evidence.  Docket #63-8, p. 5-

14   10.

15        Consequently, Claim Fifty-three is exhausted only as to those two factual theories.  Also,

16   legal theories alleged in Claim Fifty-three other than a violation of his constitutional right to

17   effective assistance of counsel remain unexhausted.

18        *Claim Fifty-five*.  In Claim Fifty-five, Bolin claims that his conviction and death sentence

19   violate his constitutional rights because cumulative effect of all the errors and constitutional

20   violations in his case.   "[A] cumulative error claim must be clearly identified in a petitioner's brief

21   before a state court to be exhausted."  *Wooten v. Kirkland*, 540 F.3d. 1019, 1026 (9th Cir. 2008)

22   (citing *Solis v. Garcia*, 219 F.3d 922 (9th Cir. 2000)).  Because Bolin failed to raise a cumulative

23   error claim with the Nevada Supreme Court, this claim is unexhausted.

24        *Treatment of unexhausted claims*.  This court has determined that Bolin is not entitled to the

25   stay and abeyance procedure condoned by the Supreme Court in *Rhines v. Weber*, 544 U.S. 269

26   (2005).  Docket ##77/80.  *Rhines* contains a clear statement as to the treatment of a mixed petition

1   (i.e., a petition containing both exhausted and unexhausted claims) when a stay is not warranted:

2       . . . [I]f a petitioner presents a district court with a mixed petition and the court
        determines that stay and abeyance is inappropriate, the court should allow the
3       petitioner to delete the unexhausted claims and to proceed with the exhausted claims
        if dismissal of the entire petition would unreasonably impair the petitioner's right to
4       obtain federal relief. See [*Rose v. Lundy*, 455 U.S. 509, 520 (1982), ] . . . (plurality
        opinion) ("[A petitioner] can always amend the petition to delete the unexhausted
5       claims, rather than returning to state court to exhaust all of his claims").

6   *Rhines*, 544 U.S. at 278.  Therefore, Bolin will be provided the opportunity to abandon his

7   unexhausted claims.  If he does so, this case will proceed on his remaining exhausted claims.  If he

8   does not abandon his unexhausted claims, his entire petition shall be dismissed under *Rose v. Lundy*.

9              4. *Cognizability*

10       *Claim Twenty-four*.  Respondents argue that Bolin's actual innocence claim under Claim

11  Twenty-four is not cognizable in a federal habeas proceeding.   The Supreme Court has yet to decide

12  whether a state prisoner can obtain federal habeas relief based on a freestanding claim of actual

13  innocence.  *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, ⸺ U.S. ⸺, ⸺, 129

14  S.Ct. 2308, 2321 (2009).  Because Bolin has failed to exhaust his state court remedies for this claim,

15  the court need not resolve the issue here.

16             5. *Procedural default*

17       A federal court will not review a claim for habeas corpus relief if the decision of the state

18  court denying the claim rested on a state law ground that is independent of the federal question and

19  adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).  The Court

20  in *Coleman* stated the effect of a procedural default as follows:

21       In all cases in which a state prisoner has defaulted his federal claims in
        state court pursuant to an independent and adequate state procedural
22      rule, federal habeas review of the claims is barred unless the prisoner
        can demonstrate cause for the default and actual prejudice as a result of
23      the alleged violation of federal law, or demonstrate that failure to
        consider the claims will result in a fundamental miscarriage of justice.
24

25  *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

26       A state procedural bar is "independent" if the state court explicitly invokes the procedural

1   rule as a separate basis for its decision.  *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9ᵗʰ Cir. 1995).

2   A state court's decision is not "independent" if the application of a state's default rule depends on a

3   consideration of federal law.  *Park v. California*, 202 F.3d 1146, 1152 (9ᵗʰ Cir. 2000).  Also, if the

4   state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit

5   has held that the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio*

6   *v. Crawford*, 306 F.3d 742, 775 (9ᵗʰ Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9ᵗʰ Cir.

7   2003).  A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established

8   at the time of the petitioner's purported default."  *Calderon v. United States Dist. Court (Bean)*, 96

9   F.3d 1126, 1129 (9ᵗʰ Cir. 1996) (citation and internal quotation marks omitted).

10         Respondents argue that, to the extent they are exhausted, Claims Eleven and Twenty-six are

11   procedurally defaulted because the claims were not raised until Bolin's state post-conviction

12   proceeding in which the Nevada Supreme Court applied Nev. Rev. Stat. § 34.810(1)(b)(2)[6] to

13   conclude that the claims had been waived by Bolin's failure to raise them on direct appeal.  The

14   Ninth Circuit has concluded that Nev. Rev. Stat. § 34.810 is an inadequate state procedural bar to

15   federal habeas review in capital habeas cases.  *See Sechrest v. Ignacio*, 549 F.3d 789, 803 (9ᵗʰ Cir.

16   2008) (relying on *Valerio*, 306 F.3d at 778).  Also, with respect to Claim Twenty-six, the Nevada

17   Supreme Court issued a decision after Bolin's direct appeal had concluded in which it acknowledged

18   the ambiguity in Nevada law regarding the appropriate time to raise ineffective assistance of counsel

19   _____

20   [6]   Nev. Rev. Stat. § 34.810(1)(b)(2) provides as follows:

21      1.  The court shall dismiss a petition if the court determines that:
       . . .

22      (b) The petitioner's conviction was the result of a trial and the grounds for the petition
23      could have been:
          . . .

24         (2) Raised in a direct appeal or a prior petition for a writ of habeas corpus or
           post-conviction relief[.]
25            . . .

26

19

1   claims and clarified that they are properly raised for the first time in a timely first post-conviction

2   petition.  *Pellegrini v. State*, 34 P.3d 519, 534-35 (Nev. 2001).

3        While Bolin did not directly raise the issue in opposing respondents' to motion to dismiss,

4   the holdings of *Valerio* and *Pellegrini* are well known to the court and sufficient to call into question

5   the adequacy of Nev. Rev. Stat. 34.810(1)(b)(2) as bar to federal review.  Because the respondents

6   have not convinced the court that the rule is adequate notwithstanding authority to the contrary, the

7   court is not procedurally barred from considering Claims Eleven and Twenty-six.  *See King v.*

8   *Lamarque*, 464 F.3d 963, 767 (9th Cir. 2006) (noting that the government ultimately carries the

9   burden to demonstrate that the state rule is an adequate procedural bar).

10        **IT IS THEREFORE ORDERED** that respondent's motion to dismiss (docket #59) is

11   GRANTED in part and DENIED in part.

12        **IT IS FURTHER ORDERED** that Claims Thirty-two, Thirty-five through Forty-three,

13   Forty-five, and Forty-eight through Fifty-one are **DISMISSED** for the reasons set forth above.

14        **IT IS FURTHER ORDERED** that petitioner shall have **twenty (20) days** from the date this

15   order is entered within which to file a Notice of Abandonment of Unexhausted Claims, indicating

16   that Claims One through Four, Seven, Twelve through Fourteen, Eighteen through Twenty-two,

17   Twenty-four, Twenty-five, Twenty-eight through Thirty-one, Thirty-three, Thirty-four, Forty-four,

18   Forty-six, Forty-seven, Fifty-two, Fifty-four, and Fifty-five are to be deleted from his second

19   amended petition (docket #49).  Additional unexhausted claims to be included in the Notice of

20   Abandonment are the portion of Claim Eleven challenging the State's handling of evidence gathered

21   from the victim's pickup truck and all of Claim Fifty-three except for petitioner's claim of

22   ineffective assistance based on appellate counsel's alleged failure to challenge "prior bad acts"

23   evidence and the State's purported suppression of potentially exculpatory evidence.

24        **IT IS FURTHER ORDERED** that, if petitioner does not abandon his unexhausted claims

25   within the time allowed, the second amended petition (docket #49) shall be dismissed under *Rose v.*

26   *Lundy*, 455 U.S. 509 (1982).

1       **IT IS FURTHER ORDERED** that, if petitioner abandons his unexhausted claims within the

2    time allowed, respondents shall have **sixty (60) days** from the date the Notice of Abandonment is

3    filed within which to file an Answer to the remaining claims in the second amended petition (docket

4    #49).

5       **IT IS FURTHER ORDERED** that respondents' motion to substitute party (docket #88) is

6    GRANTED.  The Clerk of the Court shall substitute Renee Baker for E.K. McDaniel, on the docket,

7    as the respondent warden in this action, and shall update the caption of the action to reflect this

8    change.

9       DATED:   September 27, 2011.

                                     _____

                                       UNITED STATES DISTRICT JUDGE